DEBRA F. BOGAARDS (SBN 107804)
PAVE & BOGAARDS
A Limited Liability Partnership
601 Montgomery Street, Suite 1210
San Francisco, California 94111-2616
debra@pave-bogaards.com
Telephone: (415) 979-0480
Facsimile: (415) 979-0482

Attorney for Plaintiff
**LES CAIN**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LES CAIN, and individual,<br><br>    Plaintiff,<br><br>    v.<br><br>ALLSTATE LIFE INSURANCE COMPANY,<br><br>    Defendant. | CASE NO.   CV-08-2267<br><br>**PLAINTIFF'S CASE MANAGEMENT STATEMENT**<br><br>CMC Date:   August 7, 2007<br>Time:       11:00 a.m<br>Place:      Courtroom 9, 19th Floor<br>Judge:      William Alsup<br><br>Action Filed: May 1, 2008<br>Trial Date:   Not yet set |

The plaintiff submits the following discovery report pursuant to FRCP Rule 26 (f) and this Case Management Statement.

**1.   DESCRIPTION OF CASE**

   a.   **Procedural History**

   Mr. Cain filed his complaint against Allstate Insurance Company, which issued the subject

policy to his daughter. Upon her untimely death, Mr. Cain submitted his claim to Allstate's agent. Allstate didn't pay in full on the $945,000 policy his daughter purchased, alleging that policy had been issued in error, and cancelled. For the past year, pre-litigation, as counsel for Mr. Cain, I have been trying to resolve this issue directly with Pete Romo, partner at Seyfarth Shaw, counsel for Allstate, by informally requesting the underwriting file to confirm Mr. Cain' daughter really purchased the smaller policy ($94,500) that Allstate claims she did. Mr. Cain has reason to believe the opposite is true, namely that his daughter wanted and needed the larger policy, which she kept in her desk drawer even the time of her death, and that is what she purchased.

Pre-litigation, I offered to toll the statute of limitations for 6 months and give Mr. Romo a confidential agreement in exchange for Mr. Romo showing me the underwriting file. Instead, Mr. Romo chose to "play hardball" by inviting me to file the complaint and threatening he'd merely file a motion to dismiss should I file a complaint.

After serving the president of Allstate, I never got a call from its counsel, so I could comply with this court's standing order for all judges as to the contents of a joint case management conference statement. Finally, I called Pete Romo, to ask him whether Allstate had appointed defense counsel. He said he didn't know anything about it. Much later, I received a call from his associate, Aaron Belzer, indicating he was counsel of record in this matter.

Mr. Belzer asked me to stipulate to continue this case management conference as he is getting married, and I agreed. However, I declined to continue the deadlines for the initial disclosure and other. While I have been trying to meet and confer with counsel for Allstate as to these issues, Mr. Belzer only would discuss the continuance.

Mr. Belzer did point out, however, that I inadvertently used "Aetna" instead of "Allstate" throughout the complaint. I responded by immediately filing an amended complaint with that correction.

b.     **Plaintiff's Position**

Allstate's insured, Ms. Leslie L. Cain (d.o.b.March 1, 1971), died on May 3rd, 2006 of ovarian

cancer. Ms. Cain had taken out three known Allstate life insurance policies through broker Anthony Ruiz (Agent Number 45268). The Original Policy is for $945,000.00, the Lincoln Policy is for $200,000.00, and the Universal Policy is for $88,735.00. We represent Ms. Cain's father, Mr. Leslie "Sugar" Cain who is the beneficiary of these policies.

The reason Ms. Cain applied for these insurance policies in the first place is that her father, the beneficiary, is a widower. Mr. Cain had neck surgery in 2004, and his daughter wanted to make sure that if anything happened to her, that he would be taken care of. The passing of his daughter at such a young age has been very emotional for Mr. Cain and this conflict over her insurance coverage is only prolonging his suffering.

Allstate paid Mr. Cain the undisputed amount of $96,277.32 in April of 2008, claiming Ms. Cain never intended to take out the $945,000 policy, and instead, purchased the $94,500 policy.

## 2. LESLIE CAIN'S INSURANCE POLICY

### a. Allstate Life Insurance Company Policy Number 733 577 863

Through agent Benny L. Kline, Allstate issued a policy starting on July 30, 1998 with a face amount of $945,000.00, with monthly premiums of $111.10. Allstate sent Ms. Cain a letter on August 10, 1998 confirming that the premium of $111.10 would be withdrawn automatically each month from her Bank of the West checking account. Because Ms. Cain earned a large salary of approximately $90,000.00 per year, a small change in money ($17.01 monthly premium for policy with face amount of $94,500) that was automatically withdrawn from her checking account each month would have hardly been noticeable.

Allstate alleges that the policy showing an Initial Death Benefit of $945,000.00 was a clerical error and that when this error was discovered one month later, on September 1, 1998 Allstate reissued and delivered a policy with a $94,500.00 Initial Death Benefit ("Reissued Policy"). *Ms. Cain's personal file contains no evidence of this reissued policy, and Allstate has provided no evidence of it.* Allstate claims that this Reissued Policy had the identical policy number as the Original Policy.

b.  **Lincoln Benefit Life Policy ("Lincoln Policy")**

On October 5, 2004 Ms. Cain obtained another policy through broker Anthony Ruiz. This policy, from Lincoln Benefit Life Company which is a member of Allstate Financial Group, was for $200,000.00 with monthly premiums of $34.21. Ms. Cain submitted a check for $34.21 along with the application and received "Receipt and Temporary Insurance Agreement."

On October 20, 2004 Lincoln sent a letter to Ms. Cain indicating that it must postpone her life insurance application until July 1, 2006 due to her recent ovary tumor removal. This letter indicated that a refund check would be sent to her for the money she submitted with her application, but there is no evidence of such a refund check. Temporary insurance created by the conditional receipt and premium payment remains in effect until the insurer has:

(a) communicated appropriate notice of rejection to the applicant; **and**

**(b) actually refunded the premium payment.**

Smith v. Westland Life Ins. Co. (1975) 15 Cal.3d 111, 119–120. Absent a showing that Allstate actually refunded the premium payment, the policy remained in effect.

c.  **Universal Life Policy ("Universal Policy")**

Allstate claims that on October 26, 2004 Allstate converted the Reissued Policy into a "permanent plan of insurance," the Universal Policy. Allstate further asserts that the Universal Policy was issued on November 2, 2004 and on that date Allstate terminated Ms. Cain's Reissued Policy.

Although she did have record of the new Universal Policy, there is no evidence in Ms. Cain's files, *nor has Allstate provided any evidence that the Reissued Policy was canceled*. The California Insurance Code requires that when a policy is cancelled, the insurance institution shall provide the policyholder a specific reason for the adverse decision **in writing**. Ins. Code § 791.10(a)(1). The Universal Policy has a face amount of $88,735.00 and Allstate asserts that this is the only policy in effect at the time of Ms. Cain's death on May 3, 2006.

Just five days earlier Allstate informed Ms. Cain that Allstate would have to postpone her

Lincoln Benefit policy due to her tumor removal and yet Allstate then allowed the Reissued Policy to be converted into a permanent plan of insurance. These seem to be contradictory measures.

3. **BAD FAITH: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Every insurance policy contract contains an implied covenant of good faith and fair dealing. California Shoppers, Inc. v. Royal Globe Ins. Co. (1985) 175 Cal.App.3d 1, 54. To demonstrate a breach of the implied covenant of good faith and fair dealing a plaintiff must show:

(1) benefits due under the policy are withheld; and

(2) the reason for withholding benefits is unreasonable or without proper cause.

Guebara v. Allstate Insurance Co. (9th Cir. 2001) 237 F.3d 987.

The first Guebara element is satisfied here because, thus far, Allstate has attempted to contact Mr. Cain regarding only the Universal Policy, has withheld benefits due under the other two policies, and has refused to answer Mr. Cain's questions about those other policies. Thus, benefits under the Original Policy and the Lincoln Policy are withheld.

The second element is satisfied because Allstate's explanation is unreasonable. Ms. Cain was paying for a $945,000.00 policy. Allstate has provided no evidence that it was ever reissued at any other amount. Further, Allstate have also provided no evidence that this reissued policy was converted into the Universal Policy. Absent that proof, the Universal Policy is *an additional policy, distinct from the Original Policy*. Furthermore, Allstate has provided no evidence that you refunded the money that Ms. Cain submitted with her Lincoln Policy. Without refunding her money, the Lincoln Policy is not cancelled which means that there are *three distinct policies*.

Insurers have a duty to consider all of the information reasonably available to them when deciding whether to grant or deny a claim. Mariscal v. Old Republic Life Ins. Co. (1996) 42 Cal.App.4th 1617, 1624. They are obligated to thoroughly investigate the circumstances of the loss and may not ignore evidence which supports coverage. Id. By failing to acknowledge three distinct policies, Allstate has breached the implied covenant of good faith and fair dealing and are liable for

bad faith.

## 4. BAD FAITH DAMAGES

Insurers found liable for bad faith must pay:

1) the policy benefits

2) prejudgment interest

3) attorney's fees reasonably incurred to compel payment of benefits under the policy

4) consequential damages including the cost of borrowing

## 5. PUNITIVE DAMAGES

Punitive damages may be awarded against insurers for the breach of an obligation not arising from contract if the insurer acted with "oppression, fraud or malice." Civ. Code 3294(a). See also, Silberg v. California Life Ins. Co. (1974) 11 Cal.3d 452, 463-63; Neal v. Farmers Ins. Exch. (1978) 21 Cal.3d 910, 922-923. Despite only requiring any one of these injustices to merit punitive damages, Allstate has demonstrated all three.

## 6. MALICE/RACISM

Leslie L. Cain died on May 3rd, 2006. On May 26, 2006, Mr. Cain met with agent Anthony Ruiz, not at his office but rather at Ruiz's suggested location: the parking lot of a *Peet's Coffee* in Richmond. Mr. Cain asked for a copy of the first policy for $945,000.00. Mr. Ruiz did not comply. Furthermore, Mr. Ruiz did not answer any of Mr. Cain's questions. One month later Mr. Cain received his daughter's application for the $94,500.00 policy in the mail.

The Cains are an African-American family living in Richmond, California. Richmond is a lower socio-economic, mostly African American community. Mr. Cain, age 59, is a former pitcher for the Tigers and the Giants. Although he worked as a bus driver for the last 10 years preceding his retirement, he is knowledgeable about insurance.

California Civil Code section 3294 defines malice as,

"conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."

We believe that when Mr. Ruiz met Mr. Cain at the *Peet's Coffee*, rather than at his office, he assumed that Mr. Cain was ignorant, indigent and naive. Mr. Ruiz expected Mr. Cain would be eager to sign off on the lower policy amount. This conduct was intended to injure Mr. Cain by denying him the full pay-out from his daughters' policies, to which he is entitled. This conduct is despicable and was made with the conscious disregard of Mr. Cain's rights. Therefore, Allstate is liable for malice.

**7.    FRAUD**

Allstate now claims that the original $945,000.00 policy existed for a brief time as a clerical error which was corrected on Sept. 1, 1998 to $94,500.00. This explanation is either untruthful or was inherently deceptive to Ms. Cain for the following reasons.

First, it would be illogical for Ms. Cain to have taken out a policy for only $94,500.00 in the first place. The $94,500.00 policy is a mortgage and insurance policy, but it is to insure life. Ms. Cain's property appreciated over time– she refinanced twice. At the time of her death her property was worth $300,000.00-$400,000.00. *Ms. Cain would not have taken out a policy for only $94,500.00 if she had over $300,000.00 in real estate value.*

Second, although the monthly premium for the $94,500.00 policy was $17.01 per month which would reflect the lower amount of the policy, *Ms. Cain would not have been tracking the payment because it was withdrawn directly from her bank account*. When Ms. Cain initially applied for the $945,000.00 policy, she was told it entailed monthly payments of $111.10, which are commensurate with the more expensive policy.

California Civil Code section 3294 defines fraud as:

"an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

We believe that Allstate intentionally concealed from Mr. Cain the policy for which his daughter paid. Allstate has not provided any documentation to substantiate that the Original Policy was reissued or that the reissued policy was cancelled.

Furthermore, assuming that Allstate's $945,000.00 policy was a clerical error, why then would Ms. Cain keep a copy of that erroneous paperwork? In processing her estate Mr. Cain has found that his daughter, a college graduate, was meticulous with her finances and record keeping. The fact that she kept the $945,000.00 policy documentation strongly suggests that she believed that to be the policy that she had purchased from Allstate.

8. **PRINCIPLE FACTUAL AND LEGAL ISSUES IN DISPUTE**

1. What policy did Ms. Leslie Cain first apply for with Allstate through agent Benny Kline?
   - What illustrations did Mr. Kline show Ms. Cain?
   - What amount of insurance did Ms. Cain need, given her desire to cover her condo and protect her father?

2. What policy did Allstate first issue Ms. Cain?
   - i.e.: Allstate Life Insurance Company Policy Number 733 577 863
   - Premium Amount?

3. Did underwriting make a clerical error, in issuing a policy with a face amount of $945,000 rather than $94,500?
   - What documents support Allstate's position?

- How and when did Allstate discover its alleged error?
- How and when did Allstate disclose this error to Ms. Cain?
- What documents support Allstate's alleged disclosure?

4. Did Allstate reissue said policy and deliver it to Ms. Cain?
- Where is the reissued policy?
- What evidence does Allstate have of delivery of the reissued policy to Ms. Cain?

5. What evidence is there that Allstate issued a refund check to Ms. Cain when Allstate postponed her life insurance application for a $200,000 policy with Lincoln Benefit Life Company?

6. What evidence is there that Allstate cancelled the Reissued policy, and converted it into a Univeral policy?

7. Whether Allstate failed to act fairly and in good faith.

8. Whether Allstate's agent, Anthony Ruiz's conduct was outrageous, and intended to cause Mr. Cain severe emotional distress.

## 9. ALTERNATIVE DISPUTE RESOLUTION

Plaintiff is amendable to the Early Neutral Evaluation program, and private mediation.

## 10. INITIAL DISCLOSURE

Allstate has not produced any documents or information (see "Principle factual and legal issues in dispute").

## 11. DISCOVERY

Plaintiff is unable to assess the need for additional discovery measures until after receipt of the initial disclosures. However, plaintiff anticipates taking the depositions of Benny Kline and Anthony Ruiz, if necessary. More importantly, plaintiff needs to obtain and interview Allstate's underwriting file.

**PLAINTIFF'S CASE MANAGEMENT STATEMENT CV 08-2267 WHA**
-9-

## 12. TRIAL SCHEDULE

Plaintiff requests that this matter be scheduled for another case management conference within 90-120 days.

Plaintiff requests a jury trial, and anticipates 5 days for trial.

DATED: August 7, 2008                         PAVE & BOGAARDS

By: _____
DEBRA F. BOGAARDS
Attorney for Plaintiff
**LES CAIN**

**PLAINTIFF'S CASE MANAGEMENT STATEMENT CV 08-2267 WHA**
-10-